IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


| | | |
|---|---|---|
| THE FAIR HOUSING AGENCY OF ALABAMA, etc., et. al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) | CIVIL ACTION NO: 05-0285-KD-M |
| | ) | |
| KEN WILLIAMS, etc., et. al., | ) ) | |
| Defendants. | ) | |


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) | CIVIL ACTION NO: 05-0291-KD-M |
| | ) | |
| CITY OF SARALAND, ALABAMA and SARALAND BOARD OF ADJUSTMENT. | ) ) ) | |
| Defendants. | ) | |


**<u>ORDER</u>**

The parties in these consolidated actions [1] have filed parallel motions and responses as

follows: (1) *Civil Action 05-285-KD-M* -defendants, City of Saraland, Alabama and its Board of

---

[1] These actions have been consolidated only for the purpose of discovery.  (<u>See</u> Doc. 25-
*Civil Action 05-285-KD-M* )

Adjustments, Barry Andrews, Jack Davis, Johnny Wright, Paul Logan, Charles Skipworth and

Edward Dees "Motion for Joinder of the State of Alabama as a Party Defendant and/or for

Certification to the Attorney General for the State of Alabama Concerning Questions of

Constitutionality of Statutes" and brief in support (Docs. 41, 42) and plaintiffs' opposition brief

(Docs. 48, 49); (2) *Civil Action 05-291-KD-M* - defendants' City of Saraland, Alabama and its

Board of Adjustments, Jack Davis and Johnny Wright's,  "Motion for Joinder of the State of

Alabama as a Party Defendant and/or for Certification to the Attorney General for the State of

Alabama Concerning Questions of Constitutionality of Statutes" and brief in support

(Docs. 29, 30) and the plaintiffs' opposition thereto (Doc. 33).  These motions have been fully

briefed and are now ripe for adjudication. [2]

II.    Factual Background

     In August of 2003, plaintiff Shannon Lewis filed a Request for Special Exception [3], on

---

[2]  Defendants' briefs in both actions are identical and plaintiffs' briefs in opposition are similar.  Therefore, unless otherwise noted, the Court will reference document numbers from the first action filed,  Fair Housing Agency of Alabama, et al v. The City of Saraland, CV-05-285-KD-M.

[3]  In Shades Mountain Plaza, L.L.C. v. City of Hoover, 886 So.2d 829 (Ala. Civ. App. 2003) the Alabama Court of Civil Appeals distinguished a special exception from a variance as follows:

> [A] special exception denotes a species of administrative permission which allows a property owner to use his property in a manner which the regulations expressly permit under conditions specified in the zoning regulations themselves. ⋯ Thus, a special exception is not truly an exception to the zoning regulations at all.' " 773 So.2d at 498 (quoting Lindquist v. Board of Adjustment of Jefferson County, 490 So.2d 16, 17-18 (Ala.Civ.App.1986)) (emphasis added). In other words, a special exception, though it is not a regular permitted use, is a use that is expressly listed in and permitted by a set of zoning regulations, provided that it is specially approved in accordance with the procedures, and subject to the conditions, set forth in those regulations; whereas a variance is a use that is not listed in the

2

behalf of Lewis Community Care Facility, Inc., with the City of Saraland, wherein Lewis sought

the allowance of an "adult foster home" at the location of 832 Joaneen Street in Saraland,

Alabama.

Pursuant to the City of Saraland Zoning Ordinance, this parcel of property is zoned R-1 -

a "low density single family residential district."  Alabama Code § 11-52-75.1 prohibits any

zoning law or ordinance which prevents group homes in areas zoned "multi-family" residential

areas. [4]

_____

zoning regulations, but is a relaxation of, or, literally, a "variance" from, the uses
otherwise permitted by the zoning regulations.

Id. at 835-836(citing Harris v. Jefferson County Board of Zoning Adjustment, 773 So.2d 496
(Ala.Civ.App.2000); see also  Ex parte Fairhope Board of Adjustment & Appeals, 567 So.2d
1353 (Ala.1990) (A special  exception is an enumerated use, specified in the zoning ordinances,
that requires the approval of an administrative board or agency.)

[4] Section 11-52-75.1, provides as follows:

 (a) It is the express intent of the Legislature to abolish and prohibit any zoning
law, ordinance, or regulation which prevents or prohibits mentally retarded or
mentally ill persons from living in a natural residential environment zoned
"multi-family." Zoning ordinances shall not exclude a group home from a
"multi-family" residential area solely because the persons residing in the group
home are not blood related, and no such group home shall be located within 1,000
feet of another group home as measured between lot lines. The group home shall
be required to meet all other zoning and licensing requirements of local and state
governmental agencies.

(b) For the purpose of any zoning law, ordinance or regulation in force in the
State of Alabama and its political subdivisions, the classification of
"multi-family" shall not exclude a group home in which 10 or less unrelated
persons who are mentally retarded or mentally ill may reside, and said home may,
in addition thereto, include two additional persons who need not be related by
blood or marriage to each other or to any of the mentally retarded or mentally ill
persons living in the home.

(c) Notwithstanding the provisions of this section, nothing herein contained shall

During the September 2, 2003 meeting of the Saraland Board of Adjustments, Ms. Lewis represented to the Board that the facility would house nine individuals with two staff members present at any given time. [5]   The Board denied Lewis' request and, as a result, two separate lawsuits were filed in this court: (1)  United States v. The City of Saraland, CV-05-291-KD-M (hereinafter referred to as United States suit), and the Fair Housing Agency of Alabama, et al v. The City of Saraland, CV-05-285-KD-M (hereinafter referred to as Fair Housing suit).  Both suits request injunctive relief from the Court requiring not only this specific facility be permitted and allowed, but also requesting an injunction enjoining the City of Saraland from failing to allow similarly situated facilities to be permitted through the provisions of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968.

The Fair Housing suit also makes a claim pursuant to 42 U.S.C. § 1983 for the alleged violation of the Lewis' and related plaintiffs' rights to equal protection inasmuch as the Board of Adjustments has a custom or policy of notifying adjoining and affected landowners of applications, such as that filed by Ms. Lewis.  The suit also requests that the Board's practice of providing notice of location and date of public hearings to hear the request be enjoined.

---

be construed to affect any such group home previously established and existing on the date of the enactment of this section.

Ala. Code § 11-52-75.1.

[5]  Plaintiff states that "[n]otwithstanding, Ms. Lewis' understanding was later amplified by a letter dated January 27, 2004 from Ms. Stephani Gatlin representing the need for a ten (10) bed community home for their consumers."  (Doc. 48 at 2)

II.    <u>DISCUSSION</u> [6]

Defendants in both actions now move the Court for an order joining the State of Alabama as a defendant pursuant to Rule 19 of the Federal Rules of Civil Procedure [7], or, in the alternative to certify the issues to the Attorney General for the State of Alabama pursuant to 28 U.S.C. § 2403. [8] (Doc. 42 )

---

[6]  As a threshold matter, the parties agree that municipalities (such as the City of Saraland) in the State of Alabama are creatures of limited jurisdiction and authority and they possess only those powers that have been delegated to them by the legislature, see <u>City of Leeds v. Town of Moody</u>, 319 So. 2d 242, 246 (Ala. 1975) and, consequently, a city does not have the inherent power to enact and enforce zoning regulations, it may merely do so pursuant to the power granted to it, by the legislature.  <u>Roberson v. City of Montgomery</u>, 233 So. 2d 69, 70 (Ala. 1970).

[7]  Rule 19 provides, in pertinent part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Fed. R. Civ. P. 19(a).

[8]  28 U.S.C. § 2403, provides, in pertinent part:

(b) In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the *constitutionality of any statute of that State affecting the public interest is drawn in question,* the court shall certify such fact to the attorney general of the State,

Defendants first argue that the Fair Housing suit's request for an order enjoining the City of Saraland from notifying landowners seeks to have the City utilize power it has not been granted by the legislature. [9]  Defendants argue that for this type of relief to be granted, the State of Alabama must be brought in as a party pursuant to Rule 19 of the Federal Rules of Civil Procedure or, in the alternative, that the Attorney General of the State of Alabama be notified of this action and be given the opportunity to intervene pursuant to 28 U.S.C. § 2403.

Defendants next argument focuses on the term "multifamily" in the language of the statute. [10]  Section 11-52.75.1 prohibits any zoning law or ordinance which prevents group homes in areas zoned "multi-family" residential areas.  Defendants argue that "[i]f the legislature had intended for group homes to be required in *all* forms of residential areas, the specific term

---

and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

28 U.S.C. § 2403(b)(emphasis added)


[9]  Defendants concede that adjoining landowners to a parcel which receive a special exception may be adversely affected by the grant of the special exception are given notice of the application but note that those landowners have standing and the right to appeal the grant of a special exception under Alabama law.  Ex parte Fairhope Board of Adjustment and Appeals, 567 So. 2d 1353, 1354-5 (Ala. 1990); Harris v. Jefferson County Board of Zoning Adjustment, 773 So. 2d 496, 498 (Ala. Civ. App. 2000); Union Bank v. Fay, 632 So. 2d 493, 493-4 (Ala. Civ. App. 1993)


[10]  After conducting its own research, the Court agrees with defendants' conclusion that there is no case law either in the Federal Courts or in the State Courts construing Ala. Code § 11-52-75.1

"multi-family" is unnecessary and indeed represents use of language which is counter to any

such construction. (Doc. 42 at 6)  Defendants urge the Court to interpret the use of the term

"multi-family residential area" as a "ceiling" which allows and requires municipalities to allow

group homes within these areas, but prohibits these types of homes in more restrictive zoning

residential areas such as a low density single family residential area at issue here. (Id. at 6-7) If

the Court were to adopt this interpretation, defendants argue that the City of Saraland, a creature

of limited jurisdiction, would have no legal authority to allow this facility at Joaneen Drive.  (Id.)

   In further support of their argument that the term "multi-family residential area"

represents a "ceiling" rather than a "floor", defendants point to the legal maxim "expresio unius

est exclusio alterius." [11]  Specifically, defendants argue that the statute represents a ceiling which

allows and requires group homes only in multifamily residential areas, and, as a result, the City

of Saraland had no authority vested in it to grant the Lewis facility which sought location in a

low density single family district.  (Id.) Defendants argue that for injunctive relief to be awarded

in this matter, the State of Alabama must be joined as a party Defendant so that, if appropriate,

the requested relief which directly impacts the laws of the State of Alabama can be obtained.  In

the alternative, defendants seek an order from the Court certifying these issues to the Alabama

Attorney General's Office pursuant to 28 U.S.C. § 2403.

---

   [11]  A Latin phrase meaning "expression of one thing is the exclusion of another."  Also
commonly known as the "Negative Implication Rule", this maxim assumes that the legislature
intentionally specified one set of criteria as opposed to the other. Therefore, if the issue to be
decided addresses an item not specifically named in the statute, it must be assumed the statute
does not apply.
   The Eleventh Circuit Court of Appeals has recognized "'[t]he maxim expressio unius  est
exclusio  alterius  is an aid to construction, not a rule of law,'" and may not be applicable in
every case. Allapattah Services, Inc. v. Exxon Corp., 362 F.3d 739, 756, n.20 (11th Cir. 2004)
(quoting Neuberger v. Commissioner, 311 U.S. 83, 88, 61 S.Ct. 97, 101, 85 L.Ed.2d 58 (1940)).

Plaintiff, Fair Housing Agency, maintains that it is only seeking "an order enjoining the 'method or purpose' for which the policies and customs of Defendants' Board of Adjustment are being employed." (Doc. 48 at 5)  Plaintiff argues, in sum, as follows:

> At issue is not whether the custom or policy of notifying adjoining and affected landowners be enjoined nor notice of location and date of public hearing to hear the request be enjoined as grounds for granting Defendants' Motion for Joinder and Certification.  Plaintiffs have asked this Honorable Court in their Amended Complaint to enjoin the practice of using Defendants' custom or policy of notifying adjoining and affected landowners and date of public hearing to hear the request for the sole purpose of gathering negative input from the community cries of "not in my back yard", as a method used to exclude group homes and other alternative living arrangements.

(Id.)

Plaintiffs argue that defendants' interpretation of the statute would result in excluding group homes for handicapped persons with mental and/or physical disabilities from living in any district other than those designated zoned multi-family  which would violate Alabama Code Section 11-52-75, the Constitution of Alabama, the Fair Housing Act , and the Americans with Disabilities Act.  (Id. at 8)

In the United States' case, the government argues that the State is not a necessary party under Rule 19 since the Court can provide full injunctive and declaratory relief through an injunction against the defendants themselves.  (Doc. 33)  The government further argues that the Board's decision was within its scope of  powers under Alabama Code section 11-52-80(d) to "hear and decide special exceptions ... ." (Id.  at 4)

As to defendants' argument that Alabama Code § 11-52-75.1, by negative implication, restricts the Board from the authority to grant the special exception, the government contends that the legal cannon ["expresio unius est exclusio alterius"] is only appropriate where there

8

exists in a statute a grouping or listing of items, such as enumerated rights, operating procedures, or affected parties.   The government relies, in part on <u>Chevron U.S.A. Inc. v. Echazabal</u>, 536 U.S. 73, 81 (2002) wherein the Court noted that the cannon expressio unius "properly applies only when, in the natural association of ideas in the mind of the reader, that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference."  The government argues that there is no such list or series of items present in Ala. Code § 11-52-75.1 "from which an omission bespeaks a negative implication." <u>Id.</u>  Rather, the government maintains that Section 11-52-75.1 simply states that municipalities must allow group homes for mentally disabled persons in multi-family zones and the Legislature's failure to mention other zones "such as single-family, low-density zones, single-family, medium-density zones, high-density zones, or zones in business or industrial districts...deprives us of "that essential extrastatutory ingredient of an expression-exclusion demonstration, the series of terms from which an omission bespeaks a negative implication." <u>Id.</u>

The government contends municipalities are authorized to define zones, subdivisions, and district boundaries and therefore,  municipal zoning commissions have the right to create zoning regulations tailored to each locality in the manner in which they define multi-family and single-family residential zones. Finally, the government argues that "[t]he statute at issue applies to all municipalities, mandating that housing for mentally disabled persons cannot be prohibited in multi-family residential zones regardless of municipal definitions for such zones. The statute does not speak to how municipal zoning commissions may define residential zones; it only provides for an exception to prohibitions in multi-family residential zones. Thus, the canon is not applicable in the construction of section 11-52-75.1 because it is neither ambiguous nor unclear.

(Doc. 33 at 5-7)

Before resolving this issue, a review of the laws of statutory construction is instructive.

In City of Foley Board of Adjustments and Appeals v. H & S Southern Graphics Systems, Inc.

878 So.2d 294, the Alabama Supreme Court addressed the issue of statutory construction as

follows:

> " ' "The fundamental rule of statutory construction is to ascertain and give effect
> to the intent of the legislature in enacting the statute. Advertiser Co. v. Hobbie,
> 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290
> So.2d 167 (1974). If possible, the intent of the legislature should be gathered from
> the language of the statute itself. Advertiser Co. v. Hobbie, supra; Morgan County
> Board of Education v. Alabama Public School & College Authority, 362 So.2d
> 850 (Ala.1978)." '
> "In Ex parte Pfizer, Inc., 746 So.2d 960, 964 (Ala.1999), this Court stated:
> " ' "When the language of a statute is plain and unambiguous, ... courts must
> enforce the statute as written by giving the words of the statute their ordinary
> plain meaning--they must interpret that language to mean exactly what it says and
> thus give effect to the apparent intent of the Legislature." Ex parte T.B., 698
> So.2d 127, 130 (Ala.1997). Justice Houston wrote the following for this Court in
> DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala.1998):
> " ' "In determining the meaning of a statute, this Court looks to the plain meaning
> of the words as written by the legislature. As we have said:
> " ' " ' "Words used in a statute must be given their natural, plain, ordinary, and
> commonly understood meaning, and where plain language is used a court is
> bound to interpret that language to mean exactly what it says. If the language of
> the statute is unambiguous, then there is no room for judicial construction and the
> clearly expressed intent of the legislature must be given effect." ' " ' "
> 849 So.2d at 930. In Moore v. Pettus, 260 Ala. 616, 71 So.2d 814 (1954), this
> Court stated: "The intention of zoning laws as regards a use of nonconforming
> property is to restrict rather than extend it. Fulford v. Board of Zoning of City of
> Dothan, 256 Ala. 336, 54 So.2d 580 [(1951)]. The objective is the gradual
> elimination of the nonconforming use by obsolescence or destruction by fire or
> the elements. Given the objective of zoning to eliminate nonconforming uses,
> courts throughout the country generally follow a strict policy against their
> extension or enlargement. San Diego County v. McClurken, 37 Cal.2d 683, 234
> P.2d 972 [(1951)], and cases cited there...."

878 So. 2d at 298.

As defendants correctly note, Board of Adjustments in the State of Alabama are

statutorily created entities, <u>see</u> Ala. Code § 11-52-80, whose power and authority provide that in performing their duties, they are an administrative body performing a quasi judicial function. Pursuant to Ala. Code § 11-52-80 (d) [12], the Board of Adjustments has the power to hear and decide appeals of any administrative official's decision in the enforcement of a zoning ordinance, to hear and decide special exceptions, and to authorize variance from the terms of the zoning ordinance.  <u>Asam v. City of Tuscaloosa</u>, 599 So.2d 1192 (Ala. Civ. App.), <u>cert.</u> <u>denied</u>, 506 U.S.974, 113 S.Ct. 464, 506 U.S. 974, 121 L.Ed.2d 372. (1992)

---

[12]  Ala. Code Section 11-52-80 authorizes the creation of a Board of Adjustment and provides, in pertinent part:

 (a) In availing itself of the powers conferred by this article, the legislative body of any incorporated city or town may provide for the appointment of a board of adjustment and, in the regulations and restrictions adopted pursuant to the authority of this article, may provide that the said board of adjustment shall in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinance in harmony with its general purposes and interests and in accordance with general or specific rules therein contained.
...

(d) The board of adjustment shall have the following powers:

(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto;
(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance; and
(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.

Ala. Code § 11-52-80 (d).

The instant suits seek redress against the Board for its decision to disallow the adult group home in the R-1 single family zoning district.  The Court finds that the redress plaintiffs seek from the Board of Adjustment is not outside the scope of the Boards powers as delegated to it by the Alabama State Legislature.

Further, the Court concludes that defendants' argument that by specifying the term multi-family in the statute the Alabama legislature intended to allow group homes *only* in multi-family districts is without merit.  Ala. Code §11-52.75.1 states, in sum, that group homes may not be prohibited in a multi-family zone.  However, the statute is silent as to prohibitions in other zoning areas.  The purpose of section 11-52-75.1 is to provide an exception to municipal zoning authority regarding housing for mentally disabled persons.  The fact that the statute does not speak to other specific zoning areas, does not imply that the legislature intended to excluded those zones.  See  Smith v. City of Mobile, 374 So.2d 305 (Ala.1979) (Statutes or ordinances which impose restrictions on the use of private property are strictly construed and their scope cannot be extended to include limitations not therein included or prescribed.); Civitans Care, Inc. v. Board of Adjustment of City of Huntsville, 437 So.2d 540 (Ala.Civ.App.1983) (construction of a zoning ordinance is a question of law)

The Court finds that the statute is clear and unambiguous and is not relevant to the issue in this case.  In the final analysis, the Court is simply not persuaded by defendants' contention that the State of Alabama should be made a party to these proceedings.  Further, contrary to defendants' arguments, the Court does not find that the constitutionality of the Act is implicated such that the issue should be certified to the Office of the Alabama Attorney General.  Accordingly, defendants' motions to join the State of Alabama as a party in this action, or in the

alternative to certify the questions to the Alabama Attorney General, is **DENIED**.

III.    <u>**CONCLUSION**</u>

Upon consideration, and for the reasons set forth herein, defendants' motions for joinder of the State of Alabama and/or for certification to the Attorney General for the State of Alabama (Docs. 29, 41)  are **DENIED**.

**DONE** this the <u>13th</u> day of June 2006.

/s/ Kristi K. DuBose\_\_\_\_
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**
